IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:09-CV-189-FL

| | | |
|---|---|---|
| THE MAINSTREET COLLECTION, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **O R D E R** |
| KIRKLAND'S, INC., KIRKLAND'S STORES, INC., and KIRKLANDS.COM, INC., | ) ) ) ) ) | |
| Defendants. | ) ) | |

This Cause comes before the Court upon Plaintiff's and Defendants' Motions to Compel [DE-84, 86] and Plaintiff's Motion to Lower Confidentiality Designations. [DE-96]. The parties have filed memoranda supporting and opposing these motions [DE-85, 87, 97, 102, 106, 133, 134] and have requested attorneys' fees and sanctions. For the reasons stated herein, the Motions to Compel are granted in part and denied in part. The Motion to Lower Confidentiality Designations is denied.

On October 26, 2009, Plaintiff filed a complaint against Defendants in this Court asserting, *inter alia*, claims for trade dress infringement and unfair competition in violation of the Lanham Act and the common and statutory law of North Carolina. [DE-1]. Plaintiff served its interrogatories and requests for documents and admissions on February 1, 2010 [DE-84, Ex. D], while Defendants served their First Production Requests on February 5, 2010 [DE-87, Ex. B] and their First Set of Interrogatories on February 18, 2010. [DE-87, Ex. C]. Neither party responded to these requests to the satisfaction of the other, prompting the aforementioned cross motions to

compel. Plaintiff also sought to lower the confidentiality designation of certain documents. The motions were referred to the undersigned by order entered June 8, 2010. [DE-117]. On July 12, 2010, the undersigned entered an order [DE-123] directing the parties to confer and file with the Court a joint status report regarding outstanding discovery disputes, which the parties filed on August 23, 2010. [DE-130]. According to the joint status report, the parties have now resolved some, but not all, of their discovery disputes and request the Court's assistance in compelling the remaining items. These motions are therefore ripe for adjudication and will be addressed in turn.

## Analysis

Federal Rule of Civil Procedure 26(b)(1) states in relevant part, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." The standard for relevance during the discovery phase differs from the standard employed at trial. In order to be relevant, the information "need not be admissible at the trial" but only "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). During discovery, relevance is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund. Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)); *see also* Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (stating that discovery under the Federal Rules "is broad in scope and freely permitted").

Parties must respond truthfully, fully, and completely to discovery or explain truthfully, fully, and completely why they cannot respond. *See* Hansel v. Shell Oil Corp., 169 F.R.D. 303,

2

305 (E.D. Pa. 1996). Gamesmanship to evade answering as required is not allowed. *Id.*; *see also* Outley v. City of New York, 837 F.2d 587, 590 (2d Cir. 1988) ("The rules of discovery were not designed to encourage procedural gamesmanship, with lawyers seizing upon mistakes made by their counterparts in order to gain some advantage.").

Federal Rule of Civil Procedure 33 governs interrogatories. It states that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(4). All objections must be stated with specificity, and any objection not raised is waived. Fed. R. Civ. P. 33(b)(4). "Mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive, and irrelevant'" does not suffice as a specific objection. Momah v. Albert Einstein Med. Ctr., 164 F.R.D. 412, 417 (E.D. Pa. 1996) (quoting Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982)). "If the objection has been properly articulated, it rests with the party seeking discovery to show that a discovery request lies within the bounds of Rule 26." *Id.*

A party seeking discovery may serve a request on another party asking him to permit the requesting party "to inspect, copy, test, or sample . . . any designated documents or electronically stored information . . . or . . . any designated tangible things" that constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served. Fed. R. Civ. P. 34(a). While Rule 34 of the Federal Rules of Civil Procedure does not contain the same specificity and waiver provisions as Rule 33 of the Federal Rules of Civil Procedure, the Advisory Committee notes to Rule 34 state that "[t]he procedure provided in Rule 34 is essentially the same as that in Rule 33." Fed. R. Civ. P. 34 advisory committee notes (1970 Amend.); *see also* Pulsecard, Inc. v. Discover Card Servs., Inc.,

3

168 F.R.D. 295, 303 (D. Kan. 1996) (noting that the procedures provided for in Rules 33 and 34 are essentially the same, despite subsequent amendments).

Motions to compel responses to interrogatories and requests for production are governed by Federal Rule of Civil Procedure 37(a)(3)(B), which provides that if a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, designation, production, or inspection." The party resisting discovery bears the burden of showing why it should not be granted. Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 247 (N.D. W. Va. 1970). Specifically, the movant must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law. *See* Carefirst of Md., Inc., 334 F.3d at 402-03; *see also* Jones v. Circle K Stores, Inc., 185 F.R.D. 223, 224 (M.D.N.C. 1999). "At the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" Oppenheimer Fund, Inc., 437 U.S. at 351 (quoting Hickman, 329 U.S. at 507). Thus, "[d]iscovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence' is not within the scope of Rule 26 (b)(1)." *Id.* at 351-52 (quoting Fed. R. Civ. P. 26(b)(1)). With these legal precepts in mind, the undersigned considers the cross motions to compel.

### Plaintiff's Motion to Compel

Plaintiff seeks an order compelling Defendants to (1) answer Interrogatory Nos. 12, 18, 19, and 21; (2) respond to Document Request Nos. 1, 3-14, 17-18, 20, 22 and 26; and (3) produce their privilege log.

A. **Interrogatories**

4

**Interrogatory No. 12**

Interrogatory No. 12 states: "Identify your employees, agents, and representatives that have visited AmericasMart Atlanta or the Dallas Market Center from 2007 to date. Include in your identification which shows each such person attended and dates." [DE-84, Ex. D, p.7]. Within the definition of the term "identify," Plaintiff included a request for contact information for the identified person.

Although Defendants responded to Interrogatory No. 12 with a list of names of current and former employees and the approximate dates they attended the Atlanta and Dallas market centers, Defendants failed to include any contact information for these individuals. Plaintiff now asks that Defendants complete their response to Interrogatory No. 12 by providing such contact information. Defendants contend the information is irrelevant and complain that the request is "designed solely to harass [Defendants'] present and past employees." [DE-133, p.4]. Plaintiff counters that such employees are highly relevant witnesses with potential information regarding Defendants' copying of Plaintiff's trade dress and Defendants' general practice of copying.

Having already identified the employees and dates in question, Defendants' belated claim of irrelevance and protest regarding potential "harassment" ring hollow. Providing Plaintiff with the contact information poses no undue burden to Defendants, and the consent protective order in place adequately protects the personal information of the listed employees. Plaintiff's Motion to Compel a complete response to Interrogatory No. 12 is therefore granted.

**Interrogatory No. 18**

Interrogatory No. 18 states: "Disclose every claim of intellectual property right infringement or misappropriation that has been asserted against you in the past ten years, to

5

include every cease and desist letter accusing you of infringement and each lawsuit. Include in your disclosure identification of the documents reflecting such claims." [DE-84, Ex. D, p.9].

Defendants refused to respond to the request. Plaintiff argues it has forecast evidence tending to show that Defendants have a trade practice of unfairly copying the successful product lines of competitors. A trade practice of intellectual property infringement by Defendants, if proven, would bolster Plaintiff's claims of unfair and deceptive trade practices and intentional copying of Plaintiff's asserted trade dress. Defendants contend they are "not in the business of designing or manufacturing [their[ products" [DE-102, p. 7], and that the request is therefore irrelevant to Plaintiff's claims and designed solely to harass and embarrass them.

The interrogatory is overly broad. Mere assertions and accusations against Defendants of intellectual property right infringement do not establish a trade practice of intentional copying and are therefore irrelevant. However, multiple successful claims of intellectual property right infringement against Defendants could tend to reveal a pattern to Defendants' behavior that would lend credence to Plaintiff's present claims. *See, e.g.*, Fed. R. Evid. 404(b) (evidence of other wrongs admissible to show, *inter alia*, motive, intent, knowledge, and absence of mistake); Buckley v. Mukasey, 538 F.3d 306, 319 (4th Cir. 2008) (determining that evidence of prior successful litigation against the defendant was relevant to the plaintiff's claim). Thus, Defendants are directed to respond to Interrogatory No. 18 to the extent that they have been found liable in a court of law for claims of intellectual property right infringement or misappropriation during the past ten years or have voluntarily settled any such claim. The Motion to Compel a response to Interrogatory No. 18 is otherwise denied.

**Interrogatory No. 19**

6

Case 4:09-cv-00189-FL   Document 137   Filed 10/06/10   Page 6 of 18

Interrogatory No. 19 is related to Interrogatory No. 18 and seeks information regarding whether Defendants or any of their corporate officers have been found liable for misconduct in any legal proceeding in the past ten years. Except as specified in Interrogatory No. 18, Interrogatory No. 19 seeks information well beyond the scope of the present litigation and is largely irrelevant to Plaintiff's claims of trade dress infringement. Nor is it reasonably calculated to lead to the discovery of admissible evidence. Therefore, Defendants are directed to respond to Interrogatory No. 19 only to the extent that it seeks information regarding successful claims of intellectual property right infringement or misappropriation brought against them in a court of law during the past ten years. "Successful claims" are claims in which liability has been expressly considered and found by the finder of fact, or claims which Defendants have voluntarily settled. The Motion to Compel a response to Interrogatory No. 19 is in all other respects denied.

**Interrogatory No. 21**

Interrogatory No. 21 seeks disclosure of communications between Defendants and any third parties from 2007 to present regarding Plaintiff's products and the current litigation. Defendants state that to the extent that such communications exist, they are between parties who share a common "legal interest in defending against [Plaintiff's] allegations" or are "[c]ommunications between [Defendants'] attorneys and [Defendants'] vendors or vendor's attorneys regarding legal strategies." [DE-102, p.8]. Inasmuch as Defendants' response is based on a claim that the material sought is privileged, they have failed to follow Federal Rule of Civil Procedure 26(b)(5)(A), which sets forth the manner in which such claims must be made. For that reason alone, the claim could be denied.

The "common interest rule," also known as a "joint defense privilege," is an exception to the general rule that disclosure to a third party of privileged information thereby waives the privilege. In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129, 902 F.2d 244, 248-49 (4th Cir. 1990). The Fourth Circuit has recognized that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims" without waiving privileged attorney-client communications or protected work product. *Id.* at 249; *see also* Hunton & Williams v. U.S. Dep't of Justice, 590 F.3d 272, 277 (4th Cir. 2010) ("The common interest doctrine permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims.").

The common interest doctrine has its origins in the criminal law, where multiple defendants, each having separate counsel, share information to effect a united defense. Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129, 902 F.2d at 248. The doctrine has, however, been extended to civil matters, and now includes "potential co-parties to prospective litigation." *Id.* at 249. "[A]s an exception to waiver, the joint defense or common interest rule presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine." *Id.* at 249. To be protected under the common interest privilege, "shared or jointly created information," or communication between the parties, "must first satisfy the traditional requisites for the attorney-client or work product privilege." Minebea Co., Ltd. v. Papst, 228 F.R.D. 13, 16 (D.D.C. 2005). "Additionally, the proponent of the privilege must at least demonstrate that (1) the communicating parties shared an identical legal interest, (2) the

8

communication was made in the course of and in furtherance of the joint legal effort, and (3) the privilege had not been waived." Glynn v. EDO Corp., 2010 U.S. Dist. LEXIS 86013 (D. Md. Aug. 20, 2010) (citing Grand Jury Subpoenas 89-3 and 89-4, John Doe 89-129, 902 F.2d at 248-49).

Defendants contend the communications sought by Interrogatory No. 21 "fall squarely within the protection offered by the common-interest doctrine." [DE-102, pp. 8-9]. However, in order to claim the protection of the common interest doctrine, Defendants must first demonstrate that the communications at issue are in fact privileged. Moreover, Defendants must show that the alleged privileged communication was made in the course and furtherance of a joint legal effort between parties with an identical legal interest, and that the privilege has not been waived.

In light of the foregoing, the Motion to Compel a response to Interrogatory No. 21 is granted in part and denied in part. Any communications not subject to the attorney-client privilege or the work product doctrine are to be disclosed no later than October 29, 2010. All claims of privilege asserted by Defendant must be made by October 25, 2010 and must comply with Federal Rule of Civil Procedure 26 (b)(5)(A).

**Document Requests**

**Document Request Nos. 1, 5, 7, 8, 10-14, 20, 22, 26**

Although they have produced some of the documents sought by Plaintiff, Defendants have also consistently represented that they will produce additional "nonprivileged, relevant documents that are responsive to [Plaintiff's] request." [DE-84, Ex. I, p.2]. Defendants argue that, according to the Court's Case Management Order [DE-62], they have until November 2, 2010 to complete discovery and as such, they not obligated to turn over materials until such date.

9

[DE-102, p.10]. However, under the local rules, "[a]ll discovery shall be served so as to allow the respondent sufficient time to answer *prior to the time* when discovery is scheduled to be completed." Local Civil Rule 26.1(b) (emphasis added). Thus Defendants may not wait to serve or produce discovery until the date discovery is scheduled to be completed. To the extent Defendants have not yet completed their responses to these requests, Plaintiff's Motion to Compel with regard to Document Request Nos. 1, 5, 7, 8, 10-14, 20, 22, and 26 is granted.

**Document Request Nos. 3, 4, 6, 9, 17, and 18**

Defendants have not produced documents responsive to these requests, nor have they advanced specific grounds for denying production of these documents. Plaintiff's Motion to Compel with regard to Document Request Nos. 3, 4, 6, 9, 17 and 18 is therefore granted.

**B. Privilege Log**

Plaintiff also seeks discovery of Defendants' privilege log. The parties agreed in their Consent Protective Order to list the following information in their privilege logs: "document type, date, author, addressee, copy recipient, brief description of the general subject matter, and privilege claim, i.e., attorney-client privileged and/or work product." [DE-72, ¶ 18]. The parties further agreed that "[p]rivileged communications and work product of any attorney of record with respect to this litigation that are dated on or after the date of the filing of the original Complaint need not be identified on any privilege log." [*Id.*]. Defendants maintain they possess no pre-litigation privileged documents and therefore have no privilege log to discover. Again, the undersigned cannot compel production of an item that does not exist. Plaintiff's Motion to Compel the privilege log is therefore denied. The undersigned trusts that should any pre-

10

litigation privileged documents surface, Defendants will promptly inform Plaintiff. Failure to do so will subject Defendants to penalties.

## Defendants' Motion to Compel

Defendants seek an order compelling Plaintiff to (1) answer Interrogatory Nos. 1-3, 5 and 8; and (2) respond to Production Request Nos. 3-6, 14-18, 19, 21-22, 26-28, 30-40, 42-45, and 48.

**A. Interrogatories**

**Interrogatory No. 1**

Interrogatory No. 1 seeks information regarding the conception and early development of Plaintiff's product. Plaintiff argues that "[u]nlike copyright, origin is irrelevant to proving ownership in a trade dress." [DE-134, p.8]. Thus, asserts Plaintiff, information about the creation of its trade dress has no bearing on the instant case and should be excluded from discovery. Yet while information regarding the origin and development of Plaintiff's product may not assist Plaintiff in establishing its claim for trade dress infringement, Plaintiff fails to show that the information does not relate to Defendants' defense of such a claim or otherwise "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund. Inc., 437 U.S. at 351. Defendants' Motion to Compel a response to Interrogatory No. 1 is granted.

**Interrogatory Nos. 2, 3**

Interrogatory No. 2 seeks information regarding the advertising, cataloging, and marketing expenses associated with Plaintiff's product. Interrogatory No. 3 seeks disclosure of Plaintiff's sales figures. Plaintiff contends it has already fully answered Interrogatory Nos. 2 and

11

3 and has produced documents containing the information sought, including invoices, spreadsheets, and itemized sales reports. As Plaintiff asserts it has no further information to provide, Defendants' Motion to Compel any further response to Interrogatory Nos. 2 and 3 is denied as moot.

**Interrogatory No. 5**

Interrogatory No. 5 requests identification of "all parties involved in manufacturing, making, or producing" Plaintiff's product line. [DE-87, Ex. C, p.6]. Plaintiff argues that information regarding its sourcing agents and the manufacturing of its product has no relation to its claim of trade dress infringement or Defendants' defense. Moreover, contends Plaintiff, the request "impose[s] an extreme burden" on Plaintiff because "manufacturing documents regarding [Plaintiff's] trade dress products are kept interspersed with . . . hundreds of unrelated seasonal products" such that it "would take months to sort through the documents and identify those that are relevant." [DE-134, p.10].

While discovery is broad, discovery of matter not "reasonably calculated to lead to the discovery of admissible evidence" is not within the scope of Rule 26 (b)(1). The source of Plaintiff's manufacturing has no discernible relationship to Plaintiff's asserted claim of trade dress infringement or Defendants' defense of the claim. Defendants' Motion to Compel a response to Interrogatory No. 5 is therefore denied.

**Interrogatory No. 8**

Interrogatory No. 8 seeks information supporting Plaintiff's allegation that Defendants willfully copied Plaintiff's product. Plaintiff asserts that its response is complete. Defendants' Motion to Compel a response to Interrogatory No. 8 is therefore denied as moot.

12

**B. Production Requests**

**Production Request No. 3**

Production Request No. 3, like Interrogatory No. 1, seeks production of documents related to the conception and creation of Plaintiff's product. For the reasons which applied to Interrogatory No. 1, Defendants' Motion to Compel a response to Production Request No. 3 is granted.

**Production Request Nos. 4-6**

Plaintiff asserts it has completed its response to Production Request Nos. 4-6 and has nothing more to provide. Defendants' Motion to Compel a further response to Production Request Nos. 4-6 is denied. Should any additional documents responsive to Defendants' Production Request Nos. 4-6 surface, Plaintiff is directed to promptly disclose them to Defendants or suffer imposition of sanctions.

**Production Request Nos. 14, 15**

These requests seek production of documents concerning "commercialization" of Plaintiff's products, including documents related to the "development, manufacturing, promotional efforts" and sales of Plaintiff's trade dress. [DE-87, Ex. B, p.13]. To the extent that Defendants seek documents related to the manufacturing of Plaintiff's product, it has already been determined that such information is irrelevant, and this portion of the Motion to Compel is denied. Defendants' Motion to Compel a response to Production Request Nos. 14 and 15 is otherwise granted.

**Production Request No. 16**

Request No. 16 seeks production of various financial documents, including ledgers, state and federal tax returns, W-2 forms, and accounting records. Although Plaintiff asserts it has already responded to this request, it has not produced all of the items, such as the state and federal tax returns and W-2 forms, sought by Defendants in Request No. 16. Defendants' Motion to Compel a complete response to Production Request No. 16 is therefore granted.

**Production Request Nos. 17-19, 21-22, 26-28, 30**

These requests seek production of documents related to Plaintiff's sales, advertising, and commercialization efforts. Plaintiff maintains it has already produced all documents responsive to these requests. The undersigned relies upon the assertions of counsel as officers of the Court for the veracity of Plaintiff's response. There being nothing left to compel, Defendants' Motion to Compel a response to Production Request Nos. 17-19, 21-22, 26-28, and 30 is denied.

**Production Request Nos. 31-39**

Production Request Nos. 31-39 seek documents related to the manufacturing of Plaintiff's product, including documents concerning Plaintiff's "planning or designing of its domestic and/or offshore manufacturing plant(s)." [DE-87, Ex. B, p.17]. Such manufacturing information is simply irrelevant to Plaintiff's claim of trade dress infringement or any defense thereto. Defendants' Motion to Compel a response to Production Request Nos. 31-39 is denied.

**Production Request No. 40**

Production Request No. 40 seeks "[a]ll documents concerning the MSRP of [Plaintiff's] products, including documents concerning how the MSRP is set, and documents concerning actual pricing of Mainstreet's products." [DE-87, Ex. B, p.18]. Plaintiff has not met its burden of demonstrating why it should not respond to Production Request No. 40. Defendants' Motion

14

to Compel production of documents responsive to Production Request No. 40 is therefore granted.

**Production Request No. 42**

Defendants seek production of "[a]ll purchasing orders and packing slips" for Plaintiff's product. [DE-87, Ex. B, p.18]. Plaintiff asserts it has repeatedly informed Defendants that no such items exist. The undersigned cannot compel the production of non-existent items. Defendants' Motion to Compel with regard to Production Request No. 42 is denied.

**Production Request Nos. 43, 44**

These requests concern the ownership of Plaintiff corporation, as well as the educational and employment background of its founder, Ms. Tracy Mayo. Plaintiff correctly notes that it is a legal entity separate from its owners, and that the owners are not parties to the current lawsuit. As such, argues Plaintiff, details regarding ownership or the educational background of Ms. Mayo are not relevant to the present claim of trade dress infringement. The undersigned agrees. Accordingly, Defendants' Motion to Compel with respect to Production Request Nos. 43 and 44 is denied.

**Production Request Nos. 45, 48**

These production requests seek documents related to Plaintiff's business plan and agreements with vendors, independent contractors, and distributors of its product. To the extent Production Request Nos. 45 and 48 seek information regarding manufacturers of Plaintiff's product, the requests are irrelevant and are denied. Plaintiff has otherwise failed to show specific grounds to support denial of the requests. Defendants' Motion to Compel production of documents in response to Production Request Nos. 45 and 48 is granted.

15

## Plaintiff's Motion to Lower Confidentiality Designations

Plaintiff seeks to lower the confidentiality designations for Defendants' responses to Interrogatory Nos. 2, 5 and 7. In the Consent Protective Order entered by the Court, the parties agreed that much of the information revealed in the course of the instant case was sensitive and required protection. Such information included "information concerning the parties': (1) business plans or trade secrets; (2) product lines; (3) sales figures; (4) distribution channels; and (5) confidential research, development, or commercial plans." [DE-72, p.1]. Accordingly, the parties agreed they could designate discovery material with two different levels of confidentiality: "Confidential" and "Highly Confidential--Attorneys' Eyes Only." According to the definitions set forth by the parties, discovery material designated "Confidential" includes any information not publicly available. [DE-72, p.2]. The parties agreed to reserve the "Highly Confidential-- Attorneys' Eyes Only" designation for

> commercial or proprietary information that constitutes, reflects, or concerns trade secrets, know-how, proprietary data, future product designs or plans, research and development plans, present or future business plans, the identities and addresses of a company's customers or client lists, sales information, pricing information and other business, financial, commercial or competitively sensitive information, the disclosure of which is likely to cause harm to the competitive position of the designating party; and (ii) information or data that is likely invasive of an individual's privacy interests.

[DE-72, p.3]. By designating the information "Highly Confidential--Attorneys' Eyes Only," the parties agreed to allow disclosure of such information to the attorneys of record and a select number of other individuals, such as Court personnel, but no others, including the parties themselves.

16

Plaintiff now objects to Defendants' designation of their responses to Interrogatory Nos. 2, 5, and 7 as "Highly Confidential—Attorneys' Eyes Only." Plaintiff argues that some of the information has been previously disclosed by Defendants and should be designated "Confidential" rather than "Highly Confidential—Attorneys' Eyes Only." Defendants argue the designation is appropriate. The undersigned considers the information sought by the interrogatories in turn.

**Interrogatory Nos. 2, 5**

Interrogatory Nos. 2 and 5 seek disclosure of Defendants' sales of the accused trade dress product, including "total gross dollar sales, numbers of units sold, and date range of sales." [DE-84, Ex. D, p.15]. Plaintiff argues the confidentiality designation for Defendants' response to Interrogatory Nos. 2 and 5 should be lowered because Defendants disclosed some inventory information to Plaintiff during appellate settlement discussions but did not designate the information "Highly Confidential" at the time. Moreover, contends Plaintiff, disclosure of the information would not prejudice Defendants because Plaintiff and Defendants are not direct competitors and therefore the sensitive sales information would provide no unfair commercial advantage to Plaintiff.

Plaintiff's argument completely misses the mark. The relevant inquiry is whether the information sought in the response to Interrogatory Nos. 2 and 5 is the type of information the parties agreed could be protected under the Consent Protective Order. In the Consent Protective Order, the parties expressly agreed that "sales information" could be designated with the higher confidentiality standard. Interrogatory Nos. 2 and 5 seek the disclosure of Defendants' sales information. Defendants were therefore entitled, under the Consent Protective Order, to

17

designate their responses to Interrogatory Nos. 2 and 5 "Highly Confidential—Attorneys' Eyes Only." Accordingly, Plaintiff's Motion to Lower Confidentiality Designations with respect to Interrogatory Nos. 2 and 5 is denied.

**Interrogatory No. 7**

Interrogatory No. 7 seeks to identify Defendants' "supply chain for each Accused Product, to include the manufacturer, wholesaler, and sourcing agent(s) for each." [DE-84, Ex. D, p.6]. Defendants argue this information falls within "the identities and addresses of a company's customers or client lists, sales information, pricing information and other business, financial, commercial or competitively sensitive information" and therefore deserves the "Highly Confidential" designation. The undersigned agrees that the information sought is "competitively sensitive information" that may be protected under the parties' agreement. Plaintiff's Motion to Lower Confidentiality Designations with respect to Interrogatory No. 7 is therefore denied.

## Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel is granted in part and denied in part. Similarly, Defendants' Motion to Compel is granted in part and denied in part. Plaintiff's Motion to Lower Confidentiality Designations is denied. Given the varying levels of merit to Plaintiff's and Defendants' claims, the undersigned will neither award attorneys' fees nor impose sanctions.

DONE AND ORDERED in Chambers at Raleigh, North Carolina this 6th day of October, 2010.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE